The opinion of the Court was delivered by
O’Neall, J.
In this case, it is necessary, before entering on the consideration of the merits, to consider a preliminary objection, that the Court of law cannot examine any of the proceedings had in equity, which lie behind the bond.
This is, to my mind, a strange proposition. The Court of Equity has no power to enforce this bond. Suit must be brought on it at law. Why? Is the mockery to be gone through, that the bond, when here presented, is to be pronounced legal, binding and proper, because it comes from another forum? Surely not. If it were so, it would make the Court of Equity not only supreme, and -compel the law Court to follow it, where the position of the two tribunals, and the laws are directly the reverse; but would also give a con *67 structive effect to tbe bond not sanctioned by the Court of Equity. That Court has decided nothing touching the bond; the plaintiff has nob even the license of his own Court to sue the bond.
I would be as unwilling as any one to touch the jurisdiction of another tribunal. But I am not to be frightened from examining the validity of an instrument sought to be enforced in a law Court, because it may come from the Court of Equity.
Mere irregularities in proceedings in equity, as was decided in Harvey vs. Huggins, 2 Bail. 252, cannot be examined in a law Court.
But where, as in the Commissioner vs. Phillips, 2 Hill, 631, the commissioner exceeded his powers in the requirements of his order, and the writ issued under it, a bond is taken in conformity thereto, as was adjudged in that case, I would hold it to be taken by duress, and void at law. The opinion in that case, it ought to be remembered, was pronounced by our eminent Chancellor (Judge Harper), then a member of the Appeal bench. It cannot be supposed that he would have trenched upon a jurisdiction, of which he was as bright an ornament as ever adorned it in this state !
Having now prepared the way, I propose next to examine the proceedings under which this bond was taken. To do so satisfactorily, it is desirable to know what is an” injunction ? An “injunction maybe described to be a judicial process, whereby a party is required to do a particular thing, or to refrain from doing a particular thing.” 3 Dan’l. Chan. Prac. 1809. A special injunction is one that arises out of the special circumstances stated in the bill. That the commissioner may grant a special injunction, requiring security for the forthcoming of property which may be the subject of a bill in equity is settled by the opinion of the court in the case of Aldrich vs. Kirkland, decided in the Court of Errors at this term,'and by the case of Ellis vs. Commander, 1 Strob. Eq. 188.
The Commissioner in the case in hand, made an order, that *68 “a special writ of injunction issue.” For what purpose, or commanding the party to do, or to refrain from doing, what particular thing ? No one can tell. Such an order is as void as a general search warrant. It is true, if the commissioner had sealed the writ, and it did not go beyond his authority, it might have cured the defect. But he did not, and it is now no more than the solicitor’s writ, and cannot help out the defective authority under which it issued.
The writ, however, goes entirely beyond the commissioner’s authority. For it requires in this behalf, that " the executor will not waste the estate of Henry Parris, now in his hands as executor, and that he will fully account for the same.” This is requiring the defendant to give surety for the payment of the eventual decree. This, Aldrich vs. Kirkland decided the commissioner had no power to require.
It would hence according to the case of the Commissioner vs. Phillips appear, that a bond taken under such proceedings would be taken without legal authority under color of process, and therefore by duress, and be void. But the bond went still further, and in express terms required the executor “ to stay and abide the judgment of the court.” As Judge Nott said in Livingston vs. Livingston, 2 Mill, 428, I have never seen such “ a tissue of irregularities:” and more than irregularities, such erroneous assumptions of powers and authorities.
But if the bond was freed from these fatal objections, I do not see how a breach of the condition is shown. The decree is a mere money decree, and according to Aldrich vs. Kirkland cannot be a legal breach of any bond, which the Commissioner could rightfully take under a writ of injunction issued by him.
These views sufficiently dispose of the case and show that the nonsuit was right as to all parties.
The motion is dismissed.
WITHERS, WhitNER, Glover, and Munro, JJ., concurred.
*69 Wahdlaw, J.
In the case of Aldrich vs. Kirkland, decided last week in the Court of Errors, I endeavored to state tbe principles which I think are applicable to cases like this. Under those principles, I consider that this bond, which has been brought into the Court of Law by the proper officer of the Court of Equity, has been brought with the sanction of that Court, but still I cannot but admit, that if it was originally void, no subsequent recognition of it by others could give it validity against the supposed obligors. If it had been taken under a proper order, and the condition was merely “that Amaziah B. Cobb should not waste the estate of Henry Parris in his hands as executor,” I think I could reach a result favorable to the plaintiff. In such case, I would not venture to say that the Court of Equity could not order such a bond and direct the process which should be used in enforcing its order. I might see in the bill, and affidavit which accompanies it, a seeming distinction between that portion of the estate which had been “disposed of,” and that which was “in the hands” of the executor. But I would confine myself to the terms of the obligation, and remember that the estate of a testator consists of choses in action, as well as of tangible property — that the debts of the executor to the testator were part of the estate, and part which was in' the hands of the executor — that when the final decree had cancelled the deect to A. B. Cobb, the negroes contained in that deed were thereby in effect declared to have been the testator’s at his death; and when in lieu of surrendering them specifically, the executor was required to pay certain sums as the prices he had received for them, and to account generally, his sales were thereby confirmed, and he made debtor to the estate for those sums, as well as for anything that previously he owed the estate. The decree I would regard as a decision, that the sum finally ordered to be paid was then in the hands of the executor; and the return of nulla Iona on the ft. fa. against him, I would take as evidence of his subsequent devastavit.
*70 But the order and condition are not such as I have supposed. First, The condition, “ further to stay and abide the judgment of the said Court in this behalf,” is unauthorised by the writ of injunction. Second, The condition, “fully to account for the same” [the estate], although conformable to the writ of injunction, is not authorised by the order, even if that order, to save it from indefiniteness, is referred to the bill. Third, The condition, “ not to waste the estate of the said Henry Parris now in his hands as executor,” is conformable to the writ of injunction, and to the prayer of the bill, but the writ of injunction itself is, I think, void; because in the mode which was adopted for issuing it, it was a judicial act, and was not passed upon by the commissioner himself. It is with great diffidence that I say anything concerning equity practice. I would recognize as proper any matter of practice which was approved by a Chancellor, where any such matter, sustained by the order of a commissioner, which was within the debateable limits of his power, and was not set aside by a chancellor, after opportunity for a motion to set it aside had been given. But I am obliged to reject, as the act of a judicial officer, that which was not done by himself, and which he could not depute to another. I do not intend to dispute that a commissioner might authorise a deputy to affix the seal of his office, even to sign his name to a writ. I will admit that a deputy might do anything which pertains merely to the duties of a register, where (as in Charleston), the commissioner’s duties are divided between a master and a register. But the objection here is that, in the mode which was adopted, the writ was not a mere execution of an order, such as a solicitor or register might prepare, under the directions given by the order, but was itself the initiative of various important matters of discretion, which had been mentioned in no previous proceeding. The order simply authorized a writ of special injunction to issue; the writ amplified and extended the order, so as to declare what should be enjoined, how obedience should be compelled, how many bonds should *71 be taken, and in what penalty each should be. Who decided these grave matters ? They should, I suppose, have been settled in the order; they should, I am sure, not have been left to the discretion of the complainant’s solicitor, or of a deputy, appointed to execute the prescribed matter-of-course formalities in issuing a writ. As to all of them, except, perhaps, the purpose of the injunction, the bill is as silent as the order; and after all the assistance which practice might be supposed to give in eking out the directions'given by what precedes, it is plain that much must still have been left to the good pleasure of him who drew the writ.
I regard the writ then as the mere act of the .solicitor, having no more authority than if no order whatever had preceded it. The bond taken under it was obtained by duress, and, in my opinion, is wholly void.

Motion dismissed.